(153 App. Div. 117.)

### MOSLER SAFE CO. v. GUARDIAN TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. November 15, 1912.)

1. BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY — INSOLVENCY — STOCKHOLDERS' LIABILITY—ACTION—PARTIES.
    Banking Law (Consol. Laws 1909, c. 2) § 303, provides that the stockholders of every safe-deposit company shall be jointly and severally liable for all debts that may be due and owing by it, to an amount equal to the par value of their stock in such corporation, over and above their stock, to be recovered of the stockholders who were such when the debt was contracted or the loss or damage sustained, or of any subsequent stockholder. Held, that such liability, being joint and several, was enforceable by a creditor suing one or all or any number of stockholders at law or in equity.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

2 BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY — INSOLVENCY — STOCKHOLDERS' LIABILITY—ENFORCEMENT.
    The liability of stockholders of a safe-deposit company, under Banking Law (Consol. Laws 1909, c. 2) § 303, being secondary to that of the association, it is proper for a creditor to sue in equity to have an account of the association's liabilities and a distribution of its assets, in order to determine the amount of its debt for which the stockholders are answerable.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

3. BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY — INSOLVENCY — STOCKHOLDERS' LIABILITY—ENFORCEMENT—JUDGMENT.
    In a suit against stockholders of a safe-deposit company to enforce personal liability for debts imposed by Banking Law (Consol. Laws 1909,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

,c. 2) § 303, plaintiff was entitled to a joint and several judgment against the stockholders served and shown to be liable, and to enforce the same from whomsoever it might; the right of a stockholder, compelled to pay, to contribution arising only after payment has been made, with refer· ence to which plaintiff was not concerned.

[Ed. Note.—For other case, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

4. BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY — INSOLVENCY — STOCKHOLDERS—INDIVIDUAL LIABILITY—INDEBTEDNESS OF CORPORATION— SET-OFF.

In a suit in equity by a creditor of a safe-deposit company to enforce the stockholders' liability under Banking Law (Consol. Laws 1909, c. 2) § 303, making stockholders of such corporations jointly and severally liable for all debts due and owing by the corporation, to an amount equal to the par value of their stock, the stockholders are not entitled to offset against such liability an indebtedness of the corporation to them.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

5. BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY — INSOLVENCY — STOCKHOLDERS' LIABILITY.

In a suit against stockholders of a safe-deposit company to enforce personal liability imposed by Banking Law (Consol. Laws 1909, c. 2) § 303, a finding that money advanced to the corporation by certain of the defendant stockholders was used to pay current expenses did not import that it was used to pay debts for which the stockholders were personally liable, so as to entitle them to a set-off against their liability.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71– 81½, 513, 534, 535; Dec. Dig. § 49.*]

6. BANKS AND BANKING (§ 49*)—SAFE-DEPOSIT COMPANY—STOCKHOLDERS' LIABILITY—IMPAIRMENT OF CAPITAL—ASSESSMENT.

An assessment to repair an impairment of capital of a safe-deposit company, authorized by Banking Law (Consol. Laws 1909, c. 2) § 17, to be levied by the bank superintendent, is to enable the corporation to resume business, the superintendent being without authority to require such an assessment to swell the assets to be distributed on liquidation; and hence, where such an assessment was levied against stockholders for the latter purpose, stockholders who had paid the same and were there- after sued by creditors to enforce the personal liability to creditors im- posed by Banking Law, § 303, were entitled to offset the amount so contributed against such liability.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71– 81½, 513, 534, 535; Dec. Dig. § 49.*]

Appeal from Judgment on Report of Referee.

Action by the Mosler Safe Company against the Guardian Trust Company and others. From a final judgment entered on the report of a referee, and from an interlocutory judgment, different defendants severally appeal in whole or in part. Modified and affirmed.

The Mosler Safe Company recovered a judgment against the Maiden Lane Safe-Deposit Company in July, 1909, upon certain vault construction con- tracts, which was affirmed by the Appellate Division and the Court of Ap- peals. Mosler Safe Co. v. Maiden Lane Safe-Deposit Co., 199 N. Y. 479, 93 N. E. 81, 37 L. R. A. (N. S.) 363. The debts upon which this judgment was based were payable within two years after they were contracted, action to collect the same was brought against the Maiden Lane Safe-Deposit Company within two years after they became due, and execution upon this judgment was issued and returned unsatisfied. On August 6, 1909, the superintendent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of banks, acting under section 19 of the Banking Law (Consol. Laws 1909, c. 2), took and thereafter held possession of the property and affairs of the Maiden Lane Safe-Deposit Company, for the purpose of liquidating its property under the provisions of said act. The Mosler Safe Company thereupon requested the superintendent of banks to sue under section 303 of the Banking Law, to enforce the statutory liability of the stockholders of the Maiden Lane Safe-Deposit Company, which he refused to do on account of the pendency of the appeal taken from the judgment against the Maiden Lane Safe-Deposit Company. Thereupon, in October, 1909, the Mosler Safe Company brought this suit, in its own behalf and in behalf of all other creditors of the Maiden Lane Safe-Deposit Company similarly situated, to enforce the personal liability imposed upon the stockholders under that section of the statute, and made parties defendants the debtor corporation, the superintendent of banks, and all stockholders of the Safe-Deposit Company who were such when this action was commenced and within a period of two years prior thereto. In December, 1909, the superintendent of banks determined that the capital of the Maiden Lane Safe-Deposit Company was impaired to the extent of $56,000, and thereupon notified the Safe-Deposit Company, under section 17 of the Banking Law, to restore this impairment. Acting thereon, the Safe-Deposit Company, through its board of directors levied an assessment upon its stockholders of $56 per share, and as a result a fund of approximately $23,000 was paid in by some of the stockholders during the pendency of this action. In February, 1911, during the trial of this action, an order was made for the sale of the assets of the Safe-Deposit Company by the superintendent of banks, and under that order its property was sold and $20,100 realized therefrom.

Not all of the stockholders named as defendants were served with process. In some instances both the transferror and the transferee of the same stock were served, in other instances the assignors alone were served, while in others stockholders had died prior to or during the pendency of the action. The entire number of shares of the Maiden Lane Safe-Deposit Company was 1,000, and there were before the court as defendants past and present stockholders whose total liability was measured by 1,361 shares. A motion was made to strike the case from the calendar on the ground that. all the defendants had not been served. This was denied. By the final judgment, it was decreed that there was no creditor other than the Mosler Safe Company entitled to enforce the personal liability of the stockholders; that the assets of the company were of the value of $43,460; that the total debts of the company were $88,380, and the expenses of administration $3,465; that the assets were thus capable of paying a dividend of not more than 45.25 per cent., and that the resulting deficiency would be at least 54.75 per cent.; that the payment to the Mosler Safe Company out of the assets of the Maiden Lane Safe-Deposit Company of a dividend of 45.25 per cent. would reduce the claim of said company from $46,384 to $25,395, and correspondingly reduce the amount necessary to be paid by the stockholders; that certain stockholders were entitled to an offset or allowance, to the extent of the payments heretofore made by them in discharge of their personal liability; that certain named stockholders were liable, jointly and severally, to an amount not exceeding the sums set opposite their respective names for the debt due to the Mosler Safe Company, amounting at the date of the referee's report to $46,384, but that the Mosler Safe Company should in the first instance collect from said defendants a sum not exceeding $25,395, with interest from September 30, 1911 (the date of the referee's report), the estimated deficiency remaining after the application of the corporate assets; that to that end it should be entitled to issue execution against the said defendants severally for an amount not exceeding the sums set opposite their respective names, with interest from the date of the judgment, and with the costs of the action; that any defendant who should pay more than his legal or proportionate share of the plaintiff's claim, or who, for any cause, by reason of any payment made pursuant to the decree, or by reason of any other equities, should be or become entitled to contribution from any other defendants, should have the right to compel the payment by the other defendants, adjudged liable to the plaintiff, of their proportionate shares of such excess,

and to enforce contribution against them, and for that purpose should be entitled, in the event of such overpayment, or of the existence of such right of contribution, to apply to the court for further directions to be entered at the foot of the decree.

The stockholders who had paid the assessment above referred to were not allowed to set off that amount in reduction of their liability under section 303 of the Banking Law; but another class of stockholders, consisting of those who had loaned money to the Safe-Deposit Company which was used for the payment of its current expenses, and who had accepted debenture bonds of the Safe-Deposit Company dated July 1, 1907, and payable on July 1, 1937, in satisfaction of their several claims against the company, were declared entitled to participate as creditors of the Safe-Deposit Company in a distribution of the fund arising from the payment of assessments and the sale of the corporate assets, and were further allowed to set off the amount of their claims in reduction of their personal liability as stockholders. The appeal of the several defendants ran from different portions of the judgment.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Davies, Auerbach, Cornell & Barry, of New York City (Charles H. Tuttle, of New York City, of counsel), for appellants Brady and others.

Barber, McGuire & Ehlermann, of New York City (William A. Barber and Joseph Diehl Fackenthal, both of New York City, of counsel), for appellants Guardian Trust Co. and others.

George H. Englehardt, of New York City, for appellant Bijur.

Eugene G. Kremer, of New York City, for appellants Windmuller and others.

Henderson Peck, of New York City, for appellant Black.

Olcott, Gruber, Bonynge & McManus, of New York City, for appellant Olcott.

Ehrich & Wheeler, of New York City, for appellant Siegman.

H. F. Carlton, of New York City, for appellant Carlton.

Charles·L. Hoffman, of New York City, for appellant Hirschfeld.

Warren A. Mayou, of New York City, for appellant Post.

Norbert Heinsheimer, of New York City, for appellant Cole.

Benjamin N. Cardozo and Malcolm Sundheimer, both of New York City, for respondent.

MILLER, J.   This action is brought by the plaintiff, a judgment creditor of a safe-deposit company, on behalf of itself and others similarly situated, to enforce the personal liability of stockholders under section 303·of the Banking Law. We have examined all of the questions presented by the different briefs. I shall discuss only the principal points, stating under each head the pertinent facts.

1. A defendant, who owned 50 shares, was served, appeared, and answered, but died in the state of New Jersey during the pendency of the action, and no personal representative in this state was appointed. Another, in whose name 45 shares stood at the time of the commencement of the action, had died prior thereto, and it does not appear whether he had any personal representatives, or, if so, that they were within the jurisdiction of the court. Other defendants, named, but not served, who together owned 33 shares, became stock-

holders after the plaintiff's debt was contracted. Their assignors were served. Others, who together owned 30 shares, were named, but not served. There were 1,000 shares in all. In some cases, both the transferror and the transferee of shares were named as defendants and served, so that there are defendants in court whose total liability is measured by 1,361 shares. A motion was made to strike the case from the calendar, on the ground that all the defendants had not been served; but it was not shown that any not served were within the jurisdiction of the court.

Prior to the commencement of the action, the superintendent of banks had taken possession of the property of the corporation, pursuant to section 19 of the Banking Law. The plaintiff made a demand upon him that he bring the action, which he declined to do, whereupon the action was brought in equity against the corporation, the stockholders, as hereinbefore stated, and the superintendent of banks. The complaint demanded that an account of the debts and liabilities of the corporation be stated, that its assets be sold and distributed through the medium of said superintendent as liquidating agent, and that the defendant stockholders be adjudged jointly and severally personally liable to an amount equal to the par value of the respective shares held by them. None of the defendants asked for affirmative relief against their codefendants, or for an adjustment of the equities as between themselves.

[1] The appellants rely on Warth v. Moore Blind Stitcher & Overseamer Co., 146 App. Div. 28, 130 N. Y. Supp. 748. But that case is distinguishable in two important respects. The suit was in equity to enforce the personal liability of stockholders for unpaid subscriptions under chapter 61 of the Laws of 1909 (Consol. Laws 1909, c. 59), which re-enacted chapter 354 of the Laws of 1901, and which, as far as material, provided:

"Every holder of capital stock not fully paid, in any stock-corporation, shall be personally liable to its creditors to an amount equal to the amount unpaid on the stock held by him for debts of the corporation contracted while such stock was held by him."

It seems that, unlike earlier statutes on the subject, that provision was intended to create an equal and ratable liability. See Lang v. Lutz, 180 N. Y. 254, 73 N. E. 24; Ford v. Chase, 118 App. Div. 605, 103 N. Y. Supp. 30, affirmed 189 N. Y. 504, 81 N. E. 1164. The stockholders' liability under that statute was "to the amount unpaid on the stock held by him," a liability which existed at common law, and which could be enforced by a creditor by a suit in equity, in the interest of all creditors against the corporation and all stockholders, and the decision of this court was put upon the ground that the plaintiff had elected to pursue that remedy. Said section 303 of the Banking Law provides:

"The stockholders of every such corporation shall be jointly and severally liable for all debts that may be due and owing by it to an amount equal to the par value of their stock in such corporation over and above their stock, to be recovered of the stockholders who were such when the debt was contracted or the loss or damage sustained, or of any subsequent stockholder."

There is a marked distinction between that section and sections 71 and 196, defining the liability of stockholders of banks and trust companies, respectively; the liability in the latter cases being "equally and ratably," not "jointly and severally," as was the liability imposed by the statute considered in Lang v. Lutz, supra, in which the Court of Appeals distinctly held that a creditor might sue one or all or any number of stockholders.

[2] The fact that the suit is in equity does not alter the case. The liability sought to be enforced was secondary to that of the corporation whose assets were in the hands of the superintendent of banks. It was proper for the plaintiff to come into equity to have an account of the liabilities of the corporation and a distribution of its assets, in order to determine the amount of his debt for which the stockholders should be made answerable. That amount being determined, their liability to answer for it, to the amount of the par value of the stock held by each respectively, is joint and several. Had they asked for affirmative relief against their codefendants, or against stockholders not made defendants, they would doubtless have been afforded an opportunity, had they sought it, to bring in all stockholders. But it was not for the plaintiff, unless he saw fit, to do that for them.

[3] 2. The objection to a joint and several judgment has already been answered. The judgment contains a provision under which any stockholder may move at the foot of the judgment for contribution. The plaintiff was not bound to incorporate such a provision in the judgment. He is entitled to collect his judgment from whomsoever he may, and, of course, the right of a defendant to contribution from his codefendants will arise only when he shall have paid more than his pro rata share, which is a mere matter of computation.

[4] 3. A number of stockholders loaned money to the corporation, as the referee found, "to pay the ordinary current expenses of the company." Those loans were made mostly in 1906 and 1907, though there was one loan in 1909, and a few in 1908. All but one accepted in satisfaction of their claims in whole or in part debenture bonds of the company, dated July 1, 1907, and by their terms payable on July 1, 1937. None of them brought actions on the claims, not thus satisfied, within two years after they were due. The referee found, and the final judgment adjudged, that:

"No creditors, other than the Mosler Safe Company, are entitled to enforce the personal liability of the defendant stockholders, or any of them."

None of the defendants, except one, joined in the plaintiff's demand to enforce the liability of stockholders, and his notice of appeal expressly excepted the provision of the final judgment above quoted. No one denies—indeed, all assume—that section 59 of the Stock Corporation Law applies. We may therefore start with the proposition as established that none of the defendants is in a position to enforce the liability of stockholders, or is entitled to share in the fund arising from such enforcement. The judgment, however, adjudges that the defendants who are creditors are entitled to an offset against their

individual liability to the face amount of their claims. They have also been allowed their distributive share of the assets of the corporation, over half of which arose from contributions by other stockholders, made after the commencement of this action, as hereinafter stated. While the plaintiff does not appeal, other appellants are aggrieved because their right to contribution, in case they are required to pay more than their pro rata share, is thus cut down.

It is necessary to keep clearly in mind the basis upon which the right of set-off rests, and to understand, in examining the cases, the particular statute under which each arose. Briggs v. Penniman, 8 Cow. 387, 18 Am. Dec. 454, was a suit in equity to enforce the liability of stockholders of a manufacturing corporation under 1 R. L. 1813, p. 247, which provided that the persons composing the company should be individually responsible to the extent of their respective shares for all debts due and owing by the company at the time of its dissolution. That case decided that stockholders who were creditors and entitled to claim under the act stood on the same ground as creditors not stockholders, and that, if the fund produced by the enforcement of the stockholders' liability, was not sufficient to pay all, they were entitled to share equally on the principle that equality is equity. In Bank of Poughkeepsie v. Ibbotson, 24 Wend. 473, which arose under the same provision of law, it was decided that the liability was several, that an action at law would lie, and it was said that the defense of the stockholders "is as perfect at law as in equity."

Garrison v. Howe, 17 N. Y. 458, was an action at law under the Manufacturing Act of 1848 (chapter 40) to enforce the liability of a stockholder to the amount of his stock for a debt incurred before the capital stock was paid up, and it was decided that it was a complete defense to show that the defendant had already paid on account of the debts of the corporation a sum equal to the liability imposed by the statute, and this for the reason that, in such an action, the defendant could not have an account. That case was followed by Matter of Empire City Bank, 18 N. Y. 199, which was a special proceeding under the statute (chapter 226 of the Laws of 1849) to wind up the affairs of the Empire City Bank. The liability imposed was joint and ratable to all the creditors of the bank, and it was decided that, in a proceeding in which an account of the debts and effects of the corporation could be had, a stockholder could not set off the indebtedness of the bank to him against his liability as stockholder, but that as a creditor he was entitled only to his pro rata share of the fund. It is to be observed that, in all of the foregoing cases the stockholder was as a creditor entitled to enforce the liability of stockholders for the debts of the corporation. The last case was cited without elaboration as authority for the proposition that, in an action in equity to enforce the statutory liability of stockholders of a bank, a defendant was not entitled to offset an indebtedness due him from the bank against his liability as stockholder for its debts. Barnes v. Arnold, 45 App. Div. 314–323, 61 N. Y. Supp. 85, affirmed on opinion below 169 N. Y. 611, 62 N. E. 1093.

In Mathez v. Neidig, 72 N. Y. 100, which was an action at law

to enforce the individual liability of a stockholder under the General Manufacturing Law (chapter 40 of the Laws of 1848), it was held that a stockholder, who was also a creditor to an amount equal to his stock, was entitled to offset his claim as creditor against his liability as stockholder. Said act made all stockholders severally and individually liable to creditors to an amount equal to the amount of stock held by them, respectively, for all debts of the company until the whole amount of capital stock had been paid in. The court put its decision on the ground, not that the defendant had made out the defense of payment, as where a stockholder voluntarily or on compulsion pays debts of the corporation for which he is liable, but that, as a creditor, the defendant had an interest in the fund as well as the plaintiff, because his debt was one for the payment of which stockholders were individually liable. In the course of the opinion, Church, C. J., said:

"It is also urged that, to enable a defendant to interpose this defense, he must bring himself within the provision of the twenty-fourth section of the act, limiting personal liability to debts which are to be paid within one year, and requiring a suit to be brought against the company within one year. This section has no application."

That statement is the principal support, as far as authority in this state is concerned, to sustain the part of the judgment under consideration. That case is distinguishable from this, in that that was an action at law, whereas this is a suit in equity, and Barnes v. Arnold, supra, is a later authority for the proposition that, in a suit in equity, a stockholder is not entitled to offset an indebtedness of the corporation to him against his individual liability as stockholder. The basis of the liability in that case is also somewhat different than in this. The liability in that case was imposed for failure to have the capital stock paid in. It was to supply a deficiency in the capital, intended to be a trust fund for the purpose of creditors. If the capital had all been paid in, there would have been no liability. Hence it might be urged that, within the purview of the statute, a stockholder, who had contributed to the corporation, in addition to this subscription, a sum equal to the amount of his stock, should in law be entitled to an offset. As a creditor, he was entitled to share in the assets, though not in the fund created by the enforcement of stockholders' liability, and he was entitled to apply the dividend in reduction of his liability; but in an action at law he could not have an account. In this case the statute provides for the individual liability of stockholders directly to creditors, not to supply a deficiency of capital, but in addition thereto. I own that the distinction is rather nice. But, from the standpoint of authority, Barnes v. Arnold supra, is controlling.

A distinction must be made between payment as a defense and an equitable offset. Each stockholder is liable only to the amount of his stock, and can only be required to discharge his obligation once. If he pays a debt of the corporation for which the liability is imposed, whether voluntarily or under compulsion, he thereby discharges his obligation, and, when sued, may set up the payment as a defense.

But when he stands merely in the position of a creditor, his right to a set-off must depend upon his right to share in the fund arising from the enforcement of the stockholders' liability. If he is entitled to share in that fund, his defense to an action at law is good, because an account cannot be had. But in an action in equity all in the same class are to be treated alike. A stockholder is chargeable with the full amount of his liability as such, and is entitled as a creditor to his pro rata share of the fund arising from the enforcement of the liability of stockholders, and, of course, he may offset his dividend against his liability. If he is not entitled to share in the fund by reason of not being in a position to enforce the liability of stockholders, then, of course, he can receive no dividend from the fund, and has nothing to offset against his liability. This conclusion conforms to the well-settled rule that, in equity, set-off can be allowed only as between claims in the same right or interest. A claim against the corporation does not exist in the same right or interest as a claim against a statutory fund arising from the enforcement of stockholders' liability. The stockholders' liability is to creditors, not to the corporation—not to all creditors, but only to those within prescribed conditions. Pfohl v. Simpson et al., 74 N. Y. 137; Farnsworth v. Wood et al., 91 N. Y. 308.

[5] But it is said that it is to be inferred, from the mere loan of the money to the corporation, that it was used to pay debts, for which Agate v. Sands, 73 N. Y. 620, is cited. It is to be observed that the point was not decided in that case. The finding in this case is that the money advanced to the corporation was used to pay current expenses. There is no proof in the case for what specific purpose it was used, and we do not think that a loan of money by a stockholder to a corporation to meet current expenses imports that it is to be used to pay debts for which the stockholder is personally liable.

[6] 4. On the 6th day of August, 1909, as the interlocutory decision reads, the bank superintendent "took possession of the property and business of the said Safe-Deposit Company as a delinquent corporation, and has ever since continued in and still is in such possession for the purpose of liquidating and distributing its property under the provisions of said act." In October, 1909, this suit was brought, and one of the prayers for relief was, as stated, that the assets be distributed through the medium of the superintendent as liquidating agent. On the 3d of December, 1909, the superintendent required the corporation, pursuant to section 17 of the Banking Law, to make good an impairment of capital to the extent of $56,000, and pursuant to that a notice of assessment of 56 per cent. was sent to all of the stockholders, part of whom paid the assessment, thereby creating a fund of over $23,000, which, together with the sum of $20,100, realized on the sale of the company's assets, constitutes the fund in the hands of the bank superintendent, which he is directed by the judgment to distribute among the creditors of the corporation, including the stockholders referred to in the preceding point, making a dividend of 45.45 per cent. The stockholders, who thus paid their assessments, asked to be allowed an offset to that amount, which was denied.

It is plain that a requirement that an impairment of capital shall be made good, pursuant to said section 17, is for the purpose of enabling the corporation to resume business. Such a requirement can doubtless be made, although the superintendent has taken possession under section 19, because, after taking possession, the superintendent may allow the corporation to resume business, or he may liquidate its affairs. But it is plain that the superintendent has no authority to require an assessment to be made for the purpose of swelling the assets to be distributed on a liquidation. In case of a liquidation, the liability of stockholders is determined by said section 303, and they cannot be required both to contribute to a fund to be distributed by a liquidator and to answer as stockholders for their individual liability. Now, in this case, if it is to be assumed, notwithstanding the finding last above quoted, that the purpose of the superintendent in requiring the impairment of capital to be made good was to enable the corporation to resume, then that purpose was defeated, and the consideration to the stockholders for their advances failed. The money contributed went, not to the corporation, to make good an impairment of capital to enable it to resume, but to a liquidator, who has been ordered to distribute it among the creditors. If substance rather than form, fact rather than fiction, is to govern, the contribution was not to capital, but to the creditors; and it seems to me that it is inequitable to deny any credit to those who made the contribution, and in the same judgment to direct the distribution of the sum contributed among the creditors. The money not having been used for the purposes for which it was contributed, and being still in court, or, what is tantamount to the same thing, in the hands of the liquidator, who takes the place of the court's receiver, there is no reason why it should not be applied as justice and the equities of the case require, and that is in reduction pro tanto of the liabilities as stockholders of those who contributed it.

Reliance is placed upon the case of Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, 30 L. Ed. 260; but that case is plainly distinguishable from this, in that the assessments were in fact, and not in form, paid as a contribution to capital to enable the corporation to resume business, and it did in fact resume, and the money raised by the assessment was used by it, and was not distributed among the creditors, as the judgment in this case provides shall be done. The conclusion of the opinion, delivered by Mr. Justice Mathews in that case, suggests that, if it had appeared that the fund had been distributed ratably, a different question would have been presented. Much might be said in support of the proposition that the stockholders who paid their assessments in this case were entitled to a return of the money, or at least to have it applied upon debts for which they were individually liable, and then to look to the other stockholders for contribution. But they do not complain of a ratable distribution among all the creditors, and are at least entitled to offset against their liability as stockholders the sums contributed by them respectively.

The judgment should be modified in the two respects pointed out, and, as thus modified, affirmed. All concur.

INGRAHAM, P. J. I concur with Mr. Justice MILLER in the disposition that is made of this appeal. I wish to add, however, that as the liability created by section 303 of the Banking Law (Consol. Laws 1909, c. 2; Laws 1909, c. 10) was joint and several, and was to the creditor and not to the corporation, the creditor could sue one or more of the stockholders to enforce the liability. He made certain stockholders parties defendants, who were not served with the summons in the action, and there is one stockholder who was served with the summons, but who died before judgment, and the action abated as to him, and was not revived, because there were no personal representatives appointed in this state. The fact that these stockholders were not served could not prevent the plaintiff from proceeding against others who were served, and on the objection being raised the court below should have entered an order discontinuing the action against those who had not been served and were not before the court. The action could then have proceeded against those who had been properly served and were before the court. I think, on this appeal, such an order should be entered, so as to prevent any question as to the offset of the judgment upon those who were not actual parties to the controversy. I have some doubt as to whether section 59 of the Stock Corporation Law, to which Judge MILLER refers, applies to an action to enforce this personal liability in favor of a creditor; but I do not think that question is presented, as it does not appear that any creditors who were defendants asked for any relief as against their codefendants, and served their answers on the codefendants against whom relief was asked as required by Code of Civil Procedure, § 521.

In all other respects I concur with Mr. Justice MILLER.