WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Appellant, v. LEONARD BEVILACQUA, Respondent.

Argued January 25, 1937; decided March 9, 1937.

*Francis T. Findlay* for appellant. Money collected from the defendant by virtue of funds pledged under the agreement does not bar the Superintendent from enforcing his liability under the stock assessment. (*Sowles* v. *Wittens*, 39 Fed. Rep. 403; *Reed* v. *Mobley*, 172 Ga. 116; *Delano* v. *Butler*, 118 U. S. 634; *Huff* v. *Page*, 2 Fed. Rep. [2d] 541; 269 U. S. 587; *Andrews* v. *Blair*, 124 Ohio St. 348; *Baird* v. *Eidswing*, 59 N. D. 484; *Bay Parkway Nat. Bank* v. *Shalom*, 270 N. Y. 172; *Baumann* v. *Citizens Trust Co.*, 248 App. Div. 9; *Sickels* v. *Herold*, 15 Misc. Rep. 116; 149 N. Y. 332; *Hurd* v. *Kelly*, 78 N. Y. 588; *First Nat. Bank* v. *Tisdale*, 84 N. Y. 655; *Union Bank*

v. *Sullivan,* 214 N. Y. 332.) There is no right of setoff. (*Leary* v. *Capitol Trust Co.,* 238 App. Div. 661; 263 N. Y. 640; *Baumann* v. *Citizens Trust Co.,* 248 App. Div. 9; *United States Trust Co.* v. *United States Fire Ins. Co.,* 18 N. Y. 199; *Richards* v. *Schwab,* 101 Misc. Rep. 128; *Van Tuyl* v. *Schwab,* 165 App. Div. 412; *Delano* v. *Butler,* 118 U. S. 634; *Duke* v. *Force,* 208 Pac. Rep. 67; *Reimers* v. *Larson,* 202 N. W. Rep. 653; *Citizens Bank* v. *Docking,* 120 Kan. 523; *Andrew* v. *Farmers Trust & Sav. Bank,* 213 N. W. Rep. 925.)

*George A. Orr* for respondent. Equitable principles demand that defendant's voluntary contribution to the depositors of the bank be set off against the statutory assessment levied upon his stock holdings. (*Mosler Safe Co.* v. *Guardian Trust Co.,* 153 App. Div. 117; 208 N. Y. 524; *Mathez* v. *Neidig,* 72 N. Y. 100; *Union Bank of Brooklyn* v. *Sullivan,* 214 N. Y. 332; *Queensboro Nat. Bank* v. *Kelley,* 220 App. Div. 515; *Sowles* v. *Witters,* 39 Fed. Rep. 403; *Cole* v. *Adams,* 101 Neb. 21; *Korbly* v. *Springfield,* 245 U. S. 330; *Broderick* v. *Britting,* 147 Misc. Rep. 363; *Burns* v. *Lopez,* 256 N. Y. 123.) Setoff is defendant's proper remedy, since the debts are mutual between the same parties in the same right. (*Lawrence* v. *Fox,* 20 N. Y. 268; *Seaver* v. *Ransome,* 224 N. Y. 233; *Burns* v. *Lopez,* 256 N. Y. 123.)

LEHMAN, J. In March, 1933, the Superintendent of Banks took possession of the business and assets of East Side Bank of Niagara Falls and has proceeded to liquidate the affairs of the bank. The defendant is a stockholder of the bank. In an action brought by the Superintendent of Banks to enforce the liability, imposed at that time by the Constitution of the State and by the Banking Law (Cons. Laws, ch. 2) (§ 120), upon all stockholders of insolvent banks, the defendant has been permitted to offset against his liability, otherwise conceded, a payment, larger than the statutory liability, which was made to the bank in November, 1931, under an agreement

by which the money so paid was " to be held by said East Side Bank for the better security of the depositors of said East Side Bank."

From the stipulated facts and the findings of the judge at Special Term, made in accordance therewith, it appears that in October, 1931, the bank received a communication from the Banking Department advising it that its capital of $150,000 was impaired and that " it would be necessary to consider means to correct the situation." The suggestion was made that an agreement of guaranty in the sum of $50,000 be executed. A form of agreement which would be required for such purpose by the Banking Department was delivered by the Department to representatives of the bank. At a meeting of the board of directors of the bank, a resolution was passed that " an agreement of guaranty in the sum of $50,000 be executed by the directors, as suggested by the Banking Department." The defendant was a director of the bank and present at the meeting. He executed the agreement together with other directors and three stockholders of the bank, who were not directors. Pursuant to that agreement, the defendant " deposited with said East Side Bank a certificate of deposit on the said East Side Bank for the sum of $3,333.33, and the said Bank, with the approval of the plaintiff, received and accepted said certificate of deposit as collateral security for the payment of the liability of this defendant upon said agreement of guaranty."

The defendant voluntarily executed the agreement and deposited the security for the purpose of meeting the objections of the Banking Department that the capital of the bank was impaired. If the payment had been made pursuant to an assessment lawfully levied against the stockholders to repair capital before liquidation, and the funds had been used by the bank, concededly the amount so paid could not be offset against a statutory assessment made in liquidation proceedings. (*Delano* v.

*Butler*, 118 U. S. 634.) It is said, however, that the case is different where moneys are advanced voluntarily to restore the impaired capital, but do not become part of that capital and are still intact when liquidation is commenced.

In considering the validity of the suggested distinction, and, even more, its application to the facts in this case, we must bear in mind certain well-established principles. The first principle is that, in strict sense, there cannot be a setoff, either legal or equitable, unless there are actually two demands or claims in existence; otherwise, it is obvious one claim or demand cannot be set off against another. Here we have a claim of the plaintiff against the defendant to enforce the statutory stockholder's liability; but what claim or demand has the defendant against the bank or its liquidator for repayment of the money paid under his voluntary agreement? The validity of that agreement is not challenged. It has been carried out and has served its intended purpose. The purpose of the agreement was to provide security to the depositors which would furnish them with adequate protection in spite of impairment of the bank's capital, and thus meet the objections of the Banking Department. The agreement was to continue in force and effect "until the securities * * * have appreciated sufficiently in the opinion of the New York State Banking Department to protect said depositors of said East Side Bank." That time has not come and can never come. The parties provided, in contemplation of such contingency, that "in case of a possible liquidation of said East Side Bank these securities or cash deposited hereunder shall be applied, if necessary, to the payment of the depositors of said East Side Bank, and any balance remaining, after said depositors have been paid in full, shall be returned to the parties hereto *pro rata*, and any deficiency arising by reason of the application of said securities or cash to the payment of said depositors shall be repaid to the parties hereto by said

East Side Bank out of any funds of said East Side Bank remaining after said depositors have been paid in full." The defendant does not contend that the bank or its liquidator has failed to use the amount paid by the defendant in manner authorized by the agreement, or that the defendant has any claim or demand against the bank or the liquidator for the return of the money so paid. Indeed, in the respondent's brief it is stated: " respondent neither has nor asserts any claim against the Bank." It should be obvious that if the respondent " neither has nor asserts any claim against the Bank," neither the legal or equitable doctrine of set-off can apply.

In truth, if the defendant is entitled to offset his voluntary payment made to the bank when the bank was still doing business, against his statutory liability to depositors upon subsequent liquidation of the bank, it is not upon the theory of technical set-off but upon the theory that it constitutes a voluntary payment of his statutory liability. An analysis of the cases relied upon by the defendant will show that only upon that theory has a stockholder been permitted to offset against his statutory liability to depositors upon liquidation of a bank, payments made before liquidation was begun. (Cf. *Mosler Safe Co.* v. *Guardian Trust Co.*, 153 App. Div. 117; affd., 208 N. Y. 524.) Only upon that theory, too, can a logical or practical basis be found for the rule approved by the Appellate Division in its opinion in this case that " the test of a stockholder's right to set off the payment of a prior assessment on his stock seems to depend upon the purpose and use of such a payment, that is, whether it be for the operation of the bank or for the benefit of creditors in liquidation proceedings." (41 Yale Law Journal, 583, 589.)

In determining whether the security given to the bank constitutes payment of the statutory liability of a stockholder for the debts of the bank which remain unpaid after liquidation of its assets, we must again bear in

mind well-established principles of law concerning what constitutes payment of such an obligation. The State has decreed the stockholder's liability for the purpose of creating a fund for the protection of depositors and creditors beyond and in addition to the capital of the bank exhausted by its unsuccessful operation. The liability arises independently of any fault of the stockholder, and courts of equity have no power to exonerate any stockholder from that liability because of hardship or of previous sacrifice by the stockholder for the benefit of creditors. (*Baumann* v. *Citizens Trust Co.*, 248 App. Div. 9.) The obligation is not owed to the bank but to the creditors or to the liquidator acting for them. A payment made to the bank for the use of the bank, to correct impairment of the capital of the bank, may, perhaps, be treated as a payment to be applied upon statutory liability to the creditors of the bank when the moneys paid are not used, as intended, to correct such impairment of capital and are not commingled with the general assets but are kept separate and are intact when liquidation is commenced. Such funds cannot be so applied when they are paid by the stockholders and received and used by the bank upon the understanding that they are " the price paid for the privilege of continuing its business, in the hope of saving their investment." (*Delano* v. *Butler*, 118 U. S. 634, 654.)

In this case, quite clearly the payment was made as the means whereby the impairment of the bank's capital would be restored. So the agreement states, and upon that point all are agreed. The defendant and the other persons who joined with him in signing the guaranty and in furnishing the collateral security called for by the guaranty did not transfer to the bank ownership in that collateral security; but they did give to the bank the right to hold that collateral security for the protection of the depositors of the bank until the impairment of the bank's capital should be repaired by appreciation of the securities owned by the bank so that in the opinion of the Banking Department no further protection for

creditors would be necessary; and, in case of possible liquidation of the bank, prior to that time, the securities deposited might be applied, if necessary, to the payment of the depositors of the bank. It appears from the stipulated statement of facts that when the bank received from the defendant the certificate of deposit on itself " the cash represented by said certificate of deposit went into the funds of the Bank, and said certificate of deposit was carried on the books of the Bank as a liability of said Bank. The certificate itself was held by the Bank for the purposes specified in the guaranty agreement and not used by the Bank for any other purpose." The certificate of deposit having been received only as collateral security under the guaranty agreement remained a liability of the bank when the " cash represented by said certificate of deposit went into the funds of the bank " and *must* be shown as a liability upon the books of the bank. None the less the collateral security was received and used to repair the inroads upon the bank's capital. It is a reasonable inference that the guaranty was signed and the collateral security delivered as the price of the privilege of continuing the bank's business without new contributions of capital or assessment upon its stockholders; but even if that inference be challenged, it is certainly true that the parties agreed that while the bank remained open the collateral security delivered to it should be held subject to the risk of the bank's business until the bank's capital was fully restored, or until the bank was liquidated and the collateral applied to payment of those who might be depositors at that time. Perhaps it should here be noted that before the agreement was executed and the collateral security delivered, the Banking Department had refused to accede to the suggestion that the " amount of this guarantee pledged by each individual guarantor could be offset against his double liability as a stockholder if, in the future, said liability should be enforced." In this respect this case differs from such cases as *Matter of*

*Central Bank* (242 App. Div. 747), where the Banking Department expressly agreed to accept the pledge upon that understanding.

The situation may be summed up briefly as follows: For fifteen months the bank continued, after delivery of the collateral, to do business. At the end of that time the assets of the bank were, it appears, insufficient to pay its creditors. The impaired capital was completely lost. Though the collateral delivered did not become part of the assets of the bank, yet the primary purpose of the collateral was to restore the impaired financial condition of the bank, and, consequently, was intended for use in the operation of the bank, and only incidentally was it intended for the benefit of the creditors of the bank in case the operation proved unsuccessful. Again, though the collateral delivered did not become part of the assets of the bank, since it remained at the risk of the business of the bank for fifteen months, it cannot be said that when the bank was closed and compelled to liquidate at the end of that period, the collateral was still intact. In practical effect it was depleted to the extent of any losses suffered by the bank during that period.

When the bank was liquidated, the assets of the bank constituted the primary fund from which the creditors might be paid. When that was exhausted, the collateral deposited with the bank under the guaranty agreement might be " applied, if necessary, to the payment " of the depositors of the bank as if that collateral had been part of the assets of the bank. When that was exhausted, resort might be had to the statutory liability of the stockholders. The guaranty agreement signed by the defendant was intended and was used for the protection of the depositors of the bank during the fifteen months in which the bank continued to do business. The collateral deposited as security under the guaranty agreement was at that time depleted by its use for the very purpose

for which it was intended. The defendant and the other persons who had deposited the collateral no longer had any claim upon it. It was no longer available as an offset to their conceded statutory liability. Even under the tests suggested by the defendant he is not entitled to exoneration from his statutory liability.

The judgments should be reversed, with costs in all courts, and judgment directed in favor of the plaintiff for the relief demanded in the complaint.

CRANE, Ch. J., O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Judgment accordingly.