WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Plaintiff, *v.* MARY A. COX, as Executrix, etc., of THOMAS COX, Deceased, Defendant.

WILLIAM R. WHITE, as Superintendent of Banks of the State of NEW YORK, Plaintiff, *v.* ARTHUR KILLIAN, Defendant.

WILLIAM R. WHITE, as Superintendent of Banks of the State of NEW YORK, Plaintiff, *v.* GEORGE J. COLPOYS, Defendant.

WILLIAM R. WHITE, as Superintendent of Banks of the State of NEW YORK, Plaintiff, *v.* CHARLES J. ELDERFIELD, Defendant.

Supreme Court, Niagara County, December 14, 1937.

*Francis T. Findlay*, for the plaintiff.

*Killian & Knowles*, for the defendants Cox, Killian and Colpoys.

*Tuttle, Rice, Stockwell & Rice*, for the defendant Elderfield.

HINKLEY, J. The defendants in the above-entitled actions, Killian, Colpoys and Elderfield, and the deceased, Thomas Cox, whose representative, Mary A. Cox, is a defendant, were all members of the group of directors and stockholders who attempted to rescue the East Side Bank of Niagara Falls from dissolution due to financial difficulties. One of the other members of the group who, like these defendants, was sued by plaintiff for an assessment after liquidation, is the defendant in the action of *White* v. *Bevilacqua* (273 N. Y. 282).

That decision, constituting the highest authority in the State, compels the court at the outset to determine whether the facts in these actions are such as to bring these cases within the principles of law enumerated in the above-cited decision. It is essential to point out the similar facts and to differentiate the dissimilar. Primarily there can be no fundamental distinction among any of the members of the same group who signed the agreement providing additional security to the depositors of the bank. That is, they were all stockholders and directors of the bank; they were all adults; they were all acquainted with the precarious situation which existed in the bank's financial structure; they were all contingently liable, originally at least, under sections 80 and 206 of the Banking Law for a stockholder's assessment; they all signed the agreement of November 21, 1931; they all pledged additional security to the depositors of the bank cotemporaneous with the signing of that agreement.

The essential difference and the basis for the argument of defendants' counsel, lies in the fact that Bevilacqua and others pledged as collateral certificates of deposit of the bank, whereas Killian, Colpoys and Cox pledged real estate mortgages and Elderfield pledged shares of stock of various corporations.

The emphasis placed upon this difference by defendants' counsel and the attempt to distinguish these cases from the *Bevilacqua* case by quotations from the opinion of the Court of Appeals in the latter case, are based upon an erroneous premise. The collateral security, whatever its individual character, did not prior to liquidation become a part of the actual assets nor a part of the operating funds of the bank. The mortgages and stock of these defendants as pledged added to the financial strength of the bank and constituted contingent assets available to the depositors in the event of liquidation. The certificates of deposit of the bank, when pledged by Bevilacqua and others, likewise added to the financial strength of the bank by reducing to that extent definite liabilities of the bank. True, the actual cash which Bevilacqua paid for his certificate of deposit was actually used by the bank

in its operations prior to liquidation. But that same cash would have been so employed irrespective of whether Bevilacqua and the others pledged their certificates of deposit or not, because these certificates were paid for by cash or check prior to the signing of the agreement and their pledge as collateral. The collateral, therefore, no matter whether it increased the contingent assets of the bank or decreased the liabilities of the bank, remained intact until after liquidation. Irrespective of whether the agreement was signed in order to continue business or prevent liquidation, its purpose was to strengthen the financial structure of the bank by giving additional security to the depositors. Whether we subtract from the debit or add to the credit side of the ledger, it is in the final analysis the differential between assets and liabilities which measures not only the financial soundness of the institution but also the place which it shall occupy in the public confidence.

The statement in the opinion of the Court of Appeals in the *Bevilacqua* case that " neither the legal or equitable doctrine of set-off can apply," because there are not actually two demands or claims in existence, is as true of these cases as of the *Bevilacqua* action. Sympathy for the defendants, as suggested in the brief of defendants' counsel, cannot avail, as indicated by the opinion of the court in the *Bevilacqua* case. " The liability [for assessment] arises independently of any fault of the stockholder, and courts of equity have no power to exonerate any stockholder from that liability because of hardship or of previous sacrifice of the stockholder for the benefit of creditors."

Counsel for defendants in his brief cites the case of *Broderick* v. *Britting* (147 Misc. 363). That decision was based on an erroneous theory that a court of equity could offset a collateral deposit against an assessment by reason of sympathy for the stockholder. Fortunately for that stockholder, no appeal was taken from that decision of the trial court. That erroneous decision of the trial court was relied upon by the Appellate Division in the case of *Broderick* v. *Bevilacqua* (247 App. Div. 599, at p. 601). Nevertheless that decision of the Appellate Division was reversed by the Court of Appeals (273 N. Y. 282), and the last quotation from its opinion eliminates from the trial court any power to soften the hardship which falls upon a stockholder who has, in modern language, primed the pump to save the sinking ship.

The last quotation would also seem to indicate that ignorance of the fact that an offset could not be had, would not relieve these defendants from liability. The letters are not a violation of the parol evidence rule as they do not attempt to vary a written instru-

ment.   They simply explain the purpose underlying or the reason for the execution of the agreement, and establish that no setoff was agreed upon.

The *Bevilacqua* decision declares that it is immaterial whether or not the collateral was delivered as the price of continuing the bank's business without new contributions of capital or assessment upon its stockholders.   The collateral security was received and used to repair the inroads upon the capital of the bank.   Although the collateral was physically intact at the time of liquidation, it had in practical effect been depleted by its use for the purpose for which it was intended and to the extent of any losses suffered by the bank during that period.   Certain isolated phases of the opinion of the Court of Appeals in the *Bevilacqua* case may be employed in an attempt to distinguish these cases from the *Bevilacqua* action.   But whatever differences in fact may exist between these cases and the *Bevilacqua* action, the principles of law which determined the latter case are controlling upon this trial.

Judgment may be entered in favor of the plaintiff against the defendants in accordance with this opinion.