Bell, Secretary of Banking, *v.* Krantz, Appellant.

Argued April 15, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Joseph P. Brennan,* for appellant.

*J. Julius Levy, John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee, were not heard.

OPINION BY MR. JUSTICE DREW, May 12, 1941:

Plaintiff instituted this action in assumpsit to recover from defendant an amount of money equal to the par

value of certain shares of stock owned by defendant in the Simpson State Bank,[1] Simpson, Pennsylvania. Defendant filed an affidavit of defense with a plea of set-off, which was followed by an amended affidavit of defense. Thereupon plaintiff filed a motion and rule for judgment for want of a sufficient affidavit of defense and, after argument, this rule was made absolute and judgment was entered in favor of plaintiff for the full amount of the claim. Defendant appeals.

The facts are not in dispute. On July 23, 1930, and again on April 7, 1931, examiners of the Department of Banking of this Commonwealth determined that the capital of the Simpson State Bank was impaired, but on each occasion defendant, together with other shareholders, pledged securities and certificates of deposit as collateral security for the making good of these impairments, or "of any such additional impairment. . . ." These securities and certificates of deposit were to be held in trust by the Secretary of Banking and "In the event that the said corporation shall fail to make good the impairment of the capital or any such additional impairment as aforesaid, said securities and Certificate of Deposit shall be sold or otherwise disposed of as the party of the second part [the Secretary of Banking] may elect, and a sufficient amount of the proceeds thereof, up to the full amount of said proceeds, shall be paid to the said corporation . . . to make good any such impairment existing at the time of the said sale or disposition of said securities and Certificate of Deposit." On September 9, 1931, the Secretary of Banking found it necessary to take possession of the business and property of the Bank and soon thereafter it was determined that the Bank should be liquidated. Whereupon the Secretary of Banking turned over the res of the trust to the Receiver of the Bank and the proceeds thereof

---

[1] The Simpson State Bank was incorporated under the provisions of the Act of May 13, 1876, P. L. 161, as amended.

have been paid to the depositors and other creditors of that institution. A deficit still remaining, the Secretary of Banking determined to enforce the individual statutory liability of the shareholders,[2] but this defendant refused to pay, basing his refusal on an alleged right to set-off his contributions to the funds to guarantee the making good of the first two impairments of the Bank's capital against his statutory liability on his shares of stock.

The judgment of the learned court below must be affirmed. If defendant is entitled to offset his voluntary contributions against his statutory liability on his shares of stock, it is not upon the theory of a technical set-off, since he has no claim against the Bank, his contributions having been used in conformity with the written agreements, but rather upon the theory that the payments constituted a voluntary payment of his statutory liability. The law is well settled, however, that when shareholders of a bank make contributions to restore the impaired capital of the corporation, they are not entitled to offset such contributions against their statutory liability levied by the Secretary of Banking upon the failure of the bank. The two funds are for entirely distinct purposes: the contribution to restore impaired capital is for the bank and the statutory liability is for the creditors and depositors of the bank. In other words, the former is an incident of operation, being the price paid for the privilege of continuing in business, and the latter is an incident of liquidation. *White v. Bevilacqua*, 273 N. Y. 282; 7 Am. Jur., Bank, sec. 103; Braver, Liquidation of Financial Institutions, sec. 996; 3 Zollmann, The Law of Banks and Banking, sec. 1873. And in the case of the contribution to restore impaired capital, it makes no difference whether the fund was paid directly into the assets of the bank, or

---

[2] By authority of section 5 of the Act of May 13, 1876, supra, as amended.

held in trust, as in the instant case, in the hope that the bank will prosper and earn sufficient money so as to be able to make up the impairment of capital. The purpose, and in the end the use, of the fund is the same in either case. Here the funds enabled the Bank to continue business for over a period of thirteen months, during which time its capital was further impaired. Patently it would not be equitable to allow defendant to escape his statutory liability under such circumstances.

Judgment affirmed.