THE MOSLER SAFE COMPANY, Suing on Its Own Behalf and on Behalf of All Other Creditors of the MAIDEN LANE SAFE DEPOSIT COMPANY, Respondent, *v.* GUARDIAN TRUST COMPANY et al., Appellants, and FRANK F. BRADY et al., Appellants and Respondents, Impleaded with Others.

*Mosler Safe Co.* v. *Guardian Trust Co.*, 153 App. Div. 117, modified. (Argued March 18, 1913; decided April 1, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 23, 1912, modifying and affirming as modified a final judgment entered upon the report of a referee appointed pursuant to an interlocutory judgment entered in favor of plaintiff upon a decision of the court on trial at Special Term.

The action is brought to enforce the personal liability of the stockholders of the Maiden Lane Safe Deposit Company under section 303 of the Banking Law (Cons. Laws, ch. 2). That section reads as follows: "The stockholders of every such corporation shall be jointly and severally liable for all debts that may be due and owing by it to an amount equal to the par value of their stock in such corporation over and above such stock, to be recovered of the stockholders who were such when the debt was contracted or the loss or damage sustained, or of any subsequent stockholder. Any stockholder who may have paid any demand against such corporation, either voluntarily or by compulsion, shall have a right to resort to the rest of the stockholders who are liable to contribution; and the dissolution of the corporation shall not release or affect the liability of any

stockholder incurred before dissolution." This section is a part of that article of the Banking Law which relates to safe deposit companies as distinguished from discount banks and trust companies.

In this connection we also quote section 59 of the Stock Corporation Law (Cons. Laws, ch. 59), the pertinency of which will appear in the later statement of the questions involved on this appeal, and it reads as follows: " No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall be the amount recoverable, with costs against the stockholder. No stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder."

The plaintiff, the Mosler Safe Company, is a judgment creditor of the Maiden Lane Safe Deposit Company, for brevity hereinafter referred to as the Safe Deposit Company. On July 9th, 1909, the plaintiff recovered a judgment for $39,975.38, upon which execution was issued and returned unsatisfied. Thereafter this judgment was affirmed successively in the Appellate Division and in this court.

Prior to the commencement of this action the superintendent of banks had taken possession of the property of the Safe Deposit Company under the provisions of section 19 of the Banking Law. The plaintiff, recognizing the right, under that section, of the superintendent of banks to institute an action to enforce the personal liability of the stockholders of the Safe Deposit Company, served upon that official a demand that he commence

such an action, which he declined to do; and the plaintiff. thereupon brought this action, as its title indicates, in behalf of itself and all other creditors similarly situated and willing to share in the expense of the litigation. No other creditor of the Safe Deposit Company joined with the plaintiff in bringing this suit and, if section 59 of the Stock Corporation Law applies, no other creditor of the Safe Deposit Company was entitled to join with the plaintiff in bringing this action.

During the progress of the trial, and on February 27th, 1911, the court made an order directing the superintendent of banks to sell the assets of the Safe Deposit Company. This order was executed, and the sum realized on the sale was $20,100. There was also in the hands of the superintendent of banks a fund of $23,296 with interest, which had been received from certain stockholders upon a so-called assessment of 56% for the purpose of restoring the impaired capital stock.

The action proceeded to interlocutory judgment, which was entered on February 28th, 1911, appointing a referee who was directed to ascertain and report:

1. The names of the creditors of the Safe Deposit Company and the amounts of their respective claims remaining unpaid.

2. The names of the creditors, if any (in addition to the Mosler Safe Company) of the Safe Deposit Company, who are entitled to enforce the personal liability of the defendant stockholders or any of them, and the amount of their respective claims remaining unpaid.

3. The amount of any offset or deduction to which the said defendants or any of them may be entitled by reason of any payments heretofore made by them or any of them, and whether or not such payments should be allowed in discharge, partial or complete, of their liability herein.

4. The extent of the deficiency or surplus of the assets of the Safe Deposit Company remaining after the sale by the superintendent of banks pursuant to the order of the court, of the assets of the company, and the extent to

which the application of the proceeds of such sale will reduce the amounts necessary to be paid by the defendant stockholders.

5. What sums it is necessary for the stockholders to pay to satisfy their liability respectively, and what stockholders have paid any demand against the Safe Deposit Company either voluntarily or by compulsion, and the amount of such payment in each case, and whether any of the stockholders is liable to contribution to any other stockholders, and to whom and for how much in each instance.

6. What expenses have been and will necessarily be incurred by the plaintiff, the Mosler Safe Company, in the prosecution of this action.

The referee made a report which was confirmed, and upon which final judgment was entered.

The final judgment decreed that there were no creditors other than the Mosler Safe Company entitled to enforce the liability of the stockholders of the Safe Deposit Company; that the assets of the Safe Deposit Company were of the value of $43,460.69; that the total debts of the Safe Deposit Company were $88,380.49, and the expenses of administration $3,465.86; that the assets were sufficient to pay a dividend of not more than 45.25%, and that the deficiency will be at least 54.75%; that the payment to the Mosler Safe Company out of the assets of the Safe Deposit Company of a dividend of 45.25% will reduce the claim of said company from $46,384.33 to $25,395.42, and will correspondingly reduce the amount necessary to be paid by the stockholders; that certain stockholders are entitled to an offset or allowance to the extent of the payments heretofore made by them in discharge of their personal liability; that the stockholders named in subdivision 8 of the final judgment are liable jointly and severally to an amount not exceeding the sum set opposite their names for the debt due to the Mosler Safe Company, amounting at the date of the referee's report to $46,384.33; but that the Mosler Safe Company shall .in the first instance collect from said defendants a sum not exceeding $25,395.42

with interest frcm September 30, 1911, that being the estimated deficiency after the application of the corporate assets; that the plaintiff, the Mosler Safe Company, was entitled to issue execution against the defendants severally for an amount not exceeding the sums set opposite their respective names in subdivision 8 of the final judgment, with interest from the date of the judgment and with the costs of the action; that any defendant who shall pay more than his legal or proportionate share of the plaintiff's claim, or who for any cause, by reason of any payment made pursuant to the decree, or by reason of any other equities, shall be and become entitled to contribution from any other defendants, shall have the right to compel payment by the other defendants named in said subdivision 8 of their proportionate shares of such excess, and to enforce contribution against them, and for that purpose shall be entitled, in the event of such overpayment, or of the existence of such right of contribution, to apply to the court for further directions, to be entered at the foot of the decree.

Some of the defendants appealed from the whole judgment; others appealed from specified provisions thereof, and still others acquiesced therein and took no appeal.

The Appellate Division modified the judgment in two particulars. *First*, it disallowed the offsets which the Special Term had allowed to certain of the defendants against their liability as stockholders for moneys which they had loaned to the Safe Deposit Company for the purpose of meeting its current expenses. And, *second*, it allowed an offset which had been disallowed at Special Term in favor of certain defendants who had paid a so-called assessment made by the superintendent of banks under section 17 of the Banking Law for the purpose of making good the impaired capital stock of the Safe Deposit Company. In all other respects the Appellate Division affirmed the judgment of the Special Term.

Some of the defendants have appealed to this court from the entire judgment as thus modified. Others have appealed from specified parts thereof, and still others

have not appealed. The questions raised on the appeal are briefly stated in the following conclusions.

*Joseph Diehl Fackenthal* and *William A. Barber* for Guardian Trust Company et al., appellants.

*J. Bradley Tanner* for Joseph H. Ward, appellant.

*Eugene G. Kremer* for Louis Windmuller et al., appellants.

*Harry Bijur* for Nathan Bijur, appellant.

*Charles H. Tuttle* for Frank F. Brady et al., appellants and respondents.

*Benjamin N. Cardozo* and *Malcolm Sundheimer* for Mosler Safe Company, respondent.

*Per Curiam.* If we should attempt to discuss at length all the arguments set forth in the eleven briefs submitted to us, some of which are quite voluminous, the effort would serve to confuse rather than to clarify the questions which, in the light of what has already been written, may now be most simply stated in the form of definite conclusions without the reasons upon which they are based. *Tacita quædam habentur pro expressis.*

1. The plaintiff, the Mosler Safe Company, is the only creditor of the Safe Deposit Company shown to be entitled to maintain an action to enforce the liability of the stockholders of the latter corporation under the provisions of section 303 of the Banking Law. No other creditor is shown to have complied with the provisions of section 59 of the Stock Corporation Law, which apply when such an action is brought by a creditor, although they do not apply when the action is brought by the superintendent of banks pursuant to the authority vested in him by section 19 of the Banking Law. The right of the superintendent of banks to institute and maintain such an action is not exclusive, and in this case it appears that he was requested to bring the suit and refused.

2. We agree with the Appellate Division that the validity of the judgment herein is not affected by the

34

failure to serve all the stockholders who are named as defendants. The objection that there were necessary parties defendant who were not before the court was only taken on behalf of a few of the defendants who were before the court, and their objection was neither proper in form nor seasonably made. This objection is also untenable since the action, although in equity, is brought under section 303 of the Banking Law, which relates to safe deposit companies, and under which the stockholders are "jointly and severally liable for all debts that may be due and owing" by the corporation "to an amount equal to the par value of their stock in such corporation over and above such stock," as distinguished from other provisions of the Banking Law (Cons. Laws, chap. 2, sec. 71) relating to banks, under which the stockholders are individually responsible, equally and ratably, and not one for another, to the extent of their stock at its par value; and (Cons. Laws, chap. 2, sec. 196) relating to trust companies, under which the stockholders' liability is also equal and ratable to the extent of the par value of their respective shares. Although the plaintiff might have brought his action at law (*Mathez* v. *Neidig*, 72 N. Y. 100) he was not bound to do so in view of the fact that there were many defendants whose claims under the statute, among themselves and over against the plaintiff, would be productive of a multiplicity of actions if each had to be disposed of in a separate suit. (*Pfohl* v. *Simpson*, 74 N. Y. 137.) Since the right of action is given by statute, and the liability of the defendants is joint and several, the remedy is the same in equity as at law. There is no conflict between this conclusion and what was held in *Warth* v. *Moore Blind Stitcher & Overseamer Co.* (146 App. Div. 28; affd. in this court without opinion, 207 N. Y. 673).

3. The criticism that the referee's report does not follow the direction of the interlocutory judgment in that it does not apportion among the several defendants the amount for which the plaintiff is permitted, in the first instance, to issue execution, seems to us to be without merit except in respect to the costs and extra allowance, which we

modify in paragraphs 8 and 9. The interlocutory judgment directed the referee to report what sums it is necessary for the " stockholders to pay to satisfy their liability respectively, and what stockholders have paid any demands against said Maiden Lane Safe Deposit Company either voluntarily or by compulsion, and the amount of such payment in each case, and whether any of the stockholders is liable to contribution to any other stockholders and to whom, and for how much in each instance." This the referee has done. He reported that the entire sum to be collected by the plaintiff was $46,384.33, and that the stockholders were liable for this debt to the extent set forth opposite their respective names. But he reported also that if the corporate assets should yield the estimated dividend of 45.53 per cent the plaintiff's demand would be reduced to $25,265.55, and that was the amount to which he limited the plaintiff's right to an execution in the first instance. To guard against the contingency that the corporate assets might yield less, it was properly provided that if the dividend should be less than 45.53 per cent the stockholders should still be liable, but in no event beyond the amount set opposite their respective names. The final judgment corresponds with the report except as to certain corrections in computation as to which no question is raised.

4. The judgment of the Appellate Division does not deprive the stockholders who paid the so-called assessment for the restoration of capital stock, to contribution as against other stockholders to the extent that the proceeds of the assessments were used in discharge of their personal liability. The fund resulting from the assessments amounted, as we have seen, to $23,360.69, and the fund resulting from the sale of corporate assets amounted to $20,100, constituting a combined fund of $43,460.69. The final judgment, as entered on the plaintiff's motion, contained no directions as to how this fund should be distributed. It merely fixed the amount as compared with the liabilities in order to ascertain the deficiency for which stockholders were liable. Subsequently the super-

intendent of banks procured an order which was entered at the foot of the judgment, directing that this combined fund be distributed, first, in payment of the expenses of liquidation, and, second, in payment of all the creditors ratably. This motion was not opposed by counsel for any of the stockholders who paid assessments. The order was entered without opposition and no appeal was taken therefrom to the Appellate Division. Although the plaintiff, the Mosler Safe Company, was the only creditor entitled to enforce the statutory liability, the stockholders acquiesced in the distribution of the entire fund, including the proceeds of assessments, among all the creditors ratably. The Mosler Safe Company is the only creditor to whom the stockholders were personally liable; but the fund resulting from the assessments to make good the depleted capital was distributed among all the creditors with the consent of the stockholders who paid it. In these circumstances, it is plain that the assessments can be used for the purposes of contribution against other stockholders only to the extent to which they were employed to extinguish the liability to the Mosler Safe Company. We think there is nothing in the judgment which limits this right to contribution, or which need necessarily be so construed as to extend it beyond the 56 per cent paid upon the call of the superintendent of banks. The language of subdivision XI of the judgment provides that "any defendant named in subdivision VIII of this decree, who shall pay more than his legal or proportionate share of plaintiff's claim, or who for any reason, by reason of any payment made pursuant to this decree, or by reason of other equities, shall be or become entitled to contribution from any other of said defendants, shall have the right to compel the payment by the other defendants named in subdivision VIII of this decree, of their proportionate shares of the amount of such excess, and to enforce contribution against them, and for that purpose shall be entitled, in the event of such other payment or of the existence of such right of contribution, to apply to the court for further directions to be entered at the foot of

this decree." This subdivision of the judgment was evidently drawn to provide for unforeseen contingencies, and when stripped of its verbiage, it seems to mean that any defendant stockholder, who shall pay more than his share of the plaintiff's claim, or who for any other reason shall become entitled to contribution, may apply to the court for proper directions at the foot of the decree.

5. We think the Appellate Division correctly modified the judgment of the Special Term by denying to the stockholders of the Safe Deposit Company, who had loaned money to it, the right to offset their loans against their liability as stockholders. The liability created by section 303 of the Banking Law is not for the benefit of all the creditors, but only for the benefit of that class of creditors who have fulfilled the prescribed conditions. (*Farnsworth* v. *Wood*, 91 N. Y. 308.) The plaintiff, the Mosler Safe Company, is the only creditor in that class. Obviously a stockholder, who is also a creditor in a class which would entitle him to enforce the personal liability of other stockholders, may properly offset this right against his liability. Such a creditor should not be required to contribute to a fund in which he is entitled to share except to the extent of the difference between what is owing to him and what he owes. (*Wheeler* v. *Millar*, 90 N. Y. 353.) But it is quite a different thing where the stockholder making the claim is not in the class who are entitled to share in the fund.

6. It was not error for the Appellate Division to allow the claims of those stockholders of the Safe Deposit Company who had paid the assessment upon the call of the superintendent of banks, to be deducted from their stockholders' liability to the plaintiff, the Mosler Safe Company. On the 6th day of August, 1909, the Superintendent of Banks "took possession of the property and business of the said Safe Deposit Company as a delinquent corporation, and has ever since continued in, and still is in such possession for the purpose of liquidating and distributing its property under the provisions of said act." That is one of the provisions of the interlocutory judgment. This suit

was brought in October, 1909, and among other relief the plaintiff prays that the assets be distributed through the medium of the superintendent of banks as liquidating agent. On the 3rd of December, 1909, the superintendent made a direction requiring the corporation to make good an impairment of its capital stock to the extent of $56,000. A notice of assessment of 56 per cent was given to all of the stockholders, but only a part of them paid the assessment and the fund thus created amounted to only $23,000. This sum, together with the further sum of $20,100 realized on the sale of the company's assets, constitutes the fund in the hands of the superintendent of banks which, by the Special Term judgment herein, is directed to be distributed among the creditors of the corporation, including the stockholders who had made loans to the corporation for current expenses. If the assessment of 56 per cent had actually been used for the purpose for which it was levied, we would have an entirely different situation. The only power which the superintendent of banks has under section 17 of the Banking Law to levy such an assessment, is for the purpose of enabling the corporation to resume business. But that never happened. Clearly the superintendent had no authority to make such an assessment for the purpose of swelling the assets to be distributed in liquidation. This money instead of being used to restore the impaired capital stock for the purpose of enabling the corporation to resume business, has been placed in a fund which the superintendent of banks as liquidator is directed by the judgment to distribute among the creditors of the corporation. The mere statement of the fact is enough to indicate that the Appellate Division was clearly right in holding that the stockholders who paid this assessment are entitled to offset the same against their stockholders' liability.

. 7. The judgment herein must be further modified by providing that where the vendor and the vendee of shares of stock in the Safe Deposit Company have both been made defendants, they are both liable under the statute, but there can be only one recovery. The language of the

statute is that a creditor of the corporation who is entitled to enforce the stockholders' liability may recover "of the stockholders who were such when the debt was contracted or the loss or damage sustained, or of any subsequent stockholder." This is plainly the equivalent ·of saying that in respect of every share of stock issued by the corporation there shall be a stockholders' liability to an amount equal to the par value thereof, against either the stockholder who was such when the debt was contracted or the loss or damage sustained, or by any subsequent stockholder. Under the language of the statute the plaintiff was entitled to make them both defendants. They were both liable for the debt, but payment by either would satisfy it. This construction gives the statute a fair and reasonable meaning in exact accord with its language and purpose.

8. We think that this was a proper case for the granting of an extra allowance, but we are also of opinion that the award was in excess of the statutory limit. The amount of the plaintiff's claim, which remained unpaid after the application thereto of the assets of the corporation, was $25,395.42. That is the amount which, under the judgment, the plaintiff was entitled to recover from the stockholders, and that is, therefore, the amount upon which the allowance of 5 per cent should be computed. The judgment should be modified to conform to this suggestion.

9. The judgment should be further modified by striking out the provision under which each defendant is liable for the whole of the costs and allowances, and inserting in lieu thereof a direction that each defendant pay his proportionate part of such costs and allowances.

As thus modified the judgment of the Appellate Division should be affirmed, without costs of this appeal to any of the parties.

CULLEN, Ch. J., WERNER, HISCOCK and COLLIN, JJ., concur; CUDDEBACK, J., concurs in result; GRAY and MILLER, JJ., not sitting.

Judgment accordingly.