JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Plaintiff, *v.* GEORGE A. BRITTING and Others, Defendants.

Supreme Court, Erie County, April 25, 1933.

John H. O'Day, for the plaintiff.

John L. Heider, for the defendant Williams.

Robert P. Galloway, for the defendant Widmer.

Howard W. Barrett, for the defendants Earl and Winters.

Robert W. McNulty, as trustee for St. Paul's Episcopal Church.

Slee, O'Brian, Hellings & Ulsh [Dana B. Hellings of counsel], for the defendant Schwert.

HARRIS, J.   This is an action brought by the State Superintendent of Banks for the purpose of enforcing the collection of an assessment levied on certain stockholders of the Bank of Angola, by reason of the provisions of sections 80 and 120 of the Banking Law of the State.   On the 27th day of November, 1931, the plaintiff herein, being satisfied that such bank could not with safety and expediency continue its business, did, pursuant to the provisions of section 57 of the Banking Law, take possession of such bank and is now engaged in the liquidation thereof.   In the process of such liquidation the plaintiff has determined that the reasonable value of the assets of such bank are not sufficient to pay its creditors and depositors in full and that there is due and owing by such bank to such creditors and depositors a sum in excess of $169,000 over and above the value of the assets of the bank.   Following such determination, the plaintiff levied an assessment of $100 against each stockholder for each share of stock held by him and made a demand for the payment of such assessment. At the time of the commencement of this action the defendants

herein had failed to pay such assessment. The plaintiff had the remedy to sue each of such defendants at common law for the amount of each individual assessment, but for convenience he has brought this action in equity as an omnibus action against such defendants. Although omnibus in form, the action itself is the prosecution of individual claims against individual stockholders. As a result, this action is divided into various aspects, such aspects differing in accordance with the facts presented in defense by each party defending herein and in accordance with the facts by reason of which the plaintiff endeavors to establish the liability of the defendants not appearing and answering herein.

The names of certain defendants should be stricken from the proceedings herein because such defendants have not been served. The defendants who fall into this class are Amelia L. Chevreux, Loretta Wanda and Harry Weston. This provision is made, of course, without prejudice to the plaintiff beginning a similar action if and when he can get service on such named defendants.

Certain other defendants have appeared herein, but are not defending this action, and as the plaintiff has made *prima facie* proof against them, judgment should be granted as against them in favor of the plaintiff herein as demanded in the complaint. Such defendants are Allen J. Bundy, Lola Brocksopp, Leroy Dibble, Ilona C. Dougherty Kempton, Robert J. Laverty, Bion E. Smith and Clarence R. Schultz.

Certain defendants herein have paid part or the whole of the claim of the plaintiff herein as alleged in the complaint. Of these defendants John C. Glas, against whom the assessment was originally $1,400, has paid $600, and judgment should be granted against him for the remainder of the assessment, amounting to $800. John Henry has paid his assessment in full and he is entitled to a discontinuance of the suit. George A. Britting paid his assessment before suit was commenced and no service was made on him, and his name should be stricken from the papers and proceedings.

The claims against the remaining defendants are contested, and such contests present differing questions. However, such questions fall into three general groups. In the first group come the claims against the defendants (1) Robert W. McNulty, as trustee for St. Paul's Episcopal Church, (2) DeForest Earl, individually, as a beneficiary under the will and/or as executor under the will of Lydia Earl, deceased, and (3) Catherine M. Widmer, individually or as executor of Christian G. Widmer, deceased. The question involved in each one of these claims is whether or not the defendant proceeded against was a stockholder of the bank at the time that the plaintiff took possession thereof. (Bank-

ing Law, § 120.) In reference to the defendants McNulty and Earl, the stock here in question was the property of the late Lydia Earl. By her will she bequeathed the use thereof to the church. On construction of such will the surrogate of Erie county held that that included the right to the ownership of the stock. Mrs. Earl in her will made other gifts, including certain pieces of real estate. The devisees of such real estate did not care to accept the real estate, due to the conditions attached to each of the devises. Before the estate was fully administered certain claims arose against the estate, and these claims resulted in litigation and finally in an agreement, which agreement on execution would have put the title of the stock in Mr. McNulty, as trustee of the church. Such agreement was signed and the details of the same were being carried out but not fully complied with when the bank was put into liquidation. The bank officers had already drawn and executed a new certificate of stock to Mr. McNulty, as trustee. In view of the fact, however, that the contract settling the claims and litigations and the estate was not fully executed at the time that the bank went into liquidation, I am of the opinion that the transaction was not completed and that the title of the stock was still in the estate of Mrs. Earl at the time of such liquidation. Therefore, the complaint may be dismissed as to Mr. McNulty, as trustee, and as to DeForest Earl, individually, and judgment to the amount of the claim may be had by the plaintiff against DeForest Earl, as executor under the will of Lydia Earl, deceased, and as an obligation only against the estate of said Lydia Earl, deceased. The proof on the claim against Mrs. Widmer, individually and as executrix, leads to findings that the decedent died December 9, 1929, naming in his last will and testament Mrs. Widmer as executrix and sole legatee; that Mrs. Widmer qualified as executrix and was discharged without an accounting; and in the transfer tax proceeding she testified that all claims and demands against the estate and the decedent had been paid, and that she had fully accounted for all the property of said decedent. She also filed with the Surrogate's Court an affidavit that she was the only person interested in the estate and that she had received the net assets, including the shares of stock, the subject of the claim against her in this action. The court also finds that since the death of Mr. Widmer Mrs. Widmer received and accepted as her own the dividends on the four shares of stock involved herein. The books of the bank show that title on such books remained in Mr. Widmer, but the proof above outlined and the actions of Mrs. Widmer lead the court to find that she was in equity the owner of such shares of stock and is, therefore, liable for the assessment sought in this action against

her and that the estate of her husband is not liable for such assessment. Mrs. Widmer claims that she should not be proceeded against because she was a large depositor in the Bank of Angola at the time of its liquidation. It is well-settled law that her deposit is not an offset against the claim of the Superintendent on the assessment, but she may have as an offset against such assessment the dividend, if any, which would come to her as a depositor on the liquidation of the bank.

The second group of defendants, who make active defense herein, include (1) T. Chauncey Williams and (2) Flora N. Barrett Winters. Each of these defendants proves that he and that she has been discharged in bankruptcy, and that the claim made herein was listed in the schedules in such bankruptcy proceeding, and that the plaintiff had notice of such proceeding. An assessment against a stockholder similar to that involved in this action is a provable and dischargeable debt in bankruptcy (*Van Tuyl* v. *Schwab*, 174 App. Div. 665; affd., 220 N. Y. 661), and so this action will not lie against these two defendants and each one of them is entitled to a dismissal of the complaint, so far as he and she are concerned.

This leaves undiscussed and undisposed of the claim of the plaintiff against the defendant Pius L. Schwert. Mr. Schwert, during the life of the bank and for some time preceding its going into liquidation, was a depositor, large stockholder, director and president of the Bank of Angola. Just prior to July 1, 1931, George W. C. Egbert, a Deputy Superintendent of the State Banking Department, made an examination of the Bank of Angola, and following such examination he informed the officers and directors of the bank that the condition of its affairs was dubious and that if the bank was to continue in business other security was to be provided for the protection of its depositors. In response to this information and demand, the defendant Schwert brought to the bank certain bonds and mortgages aggregating in amount the sum of $51,356.47, which bonds and mortgages he deposited in the bank's vaults under and by virtue of an agreement which read as follows:

" *Agreement,* made and executed this 1st day of July, 1931, between Bank of Angola, a domestic banking corporation of the State of New York, having its principal office in the Village of Angola, New York, and Pius L. Schwert, of the Village of Angola, New York,

" WITNESSETH, that whereas it is desired that additional security be given to the depositors of said Bank of Angola;

" *Now, Therefore,* in consideration of the premises and of the sum of One ($1.00) Dollar paid by said Bank of Angola to the said Pius L. Schwert, the said Pius L. Schwert has, by nine (9)

assignments, copies of which are attached hereto and made a part hereof, assigned nine (9) mortgages in the aggregate amount of Fifty-one thousand three hundred fifty-six and 47/100 ($51,356.47) Dollars which mortgages are to be held by the Bank of Angola for the better security of the depositors of that institution.

"*It is further agreed* that all or any part of the above mentioned mortgages shall be assigned to the said Pius L. Schwert at such time as the Superintendent of Banks of the State of New York believes that the assets of said Bank of Angola have appreciated in value in such an amount as to make it no longer necessary for the said Bank of Angola to continue to hold the said mortgages, and consents that the same be reassigned to the said Pius L. Schwert.

"*It is further agreed* that in case of liquidation of the said Bank of Angola, the aforementioned mortgages shall be applied, if necessary, to the payment of the depositors of the said Bank of Angola, and that any balance from the proceeds of said mortgages remaining after said depositors have been paid in full shall be returned to the said Pius L. Schwert.

"*It is further agreed* that any amounts collected from the stockholders of the said Bank of Angola as a result of an assessment upon them, shall be applied toward the payment of depositors prior to any payment to depositors from the proceeds of the mortgages above mentioned.

"*It is further agreed* that the said Bank of Angola shall not release to the said Pius L. Schwert any of the above mentioned mortgages without first obtaining the consent of the Superintendent of Banks of the State of New York and that this agreement shall not be modified or altered in any manner whatsoever without first obtaining the consent of the said Superintendent of Banks of the State of New York.

"This agreement shall bind the heirs, representatives and assigns of the respective parties hereto.

"*In witness whereof,* the parties hereto have set their hands and seals, the day and year first above written.

[L. S.]                "BANK OF ANGOLA,
                    "Signed by P. L. SCHWERT,
                                        "*President.*

"Attested:
    "T. C. WILLIAMS,
    [L. S.]       "*Cashier, Bank of Angola.*"

These bonds and mortgages, although in the vaults of the bank, were held separate from its assets and were never entered upon its books as assets. It is evident that they were segregated as a trust

for the purposes specified in the agreement and never were used for any other purpose. They are still held in the bank by the representatives of the State Banking Department. The defendant herein now claims that he is entitled to have a sufficient portion of such bonds and mortgages and their value set off as against his liability on the stock assessment, which is the basis of this action, while the plaintiff claims that he is not so entitled. In order to determine the question herein involved, it is necessary to make an examination both of section 120 of the Banking Law and of such agreement. Section 120 of the Banking Law fixes the liability of a stockholder of a failing bank. That liability is the loss of the value of his own stock plus an amount equal to the face of the stock held by such person. There is no provision of law fixing any different liability. It is true that if any portion of the bonds and mortgages in question had been used in the bank's business before it closed, there would have been sufficient consideration which the bank or the plaintiff herein could have used as a defense against any claim made by the defendant Schwert for the value of such bonds and mortgages. (*Korbly* v. *Springfield Inst. for Savings*, 245 U. S. 330.) Here we have the situation where such deposit of bonds and mortgages remained an integer in and of itself and was used for no purpose connected with the business of the bank. To say that the defendant Schwert should now pay to the plaintiff an amount equal to the value of the stock (*i. e.*, $15,400) would mean that he will have paid for the protection of the depositors in the liquidation of the bank the sum of $51,356.47 plus $15,400. This would set him out in a class by himself and in so far as the $15,400 is concerned, doing so would certainly create an injustice, which equity should not do. Moreover, an examination of the agreement of July 1, 1931, shows that it recites as follows:

" WHEREAS it is desired that additional security be given to the depositors of said Bank of Angola * * * for the better security of the depositors of that institution.

" *It is further agreed* that in case of liquidation of the said Bank of Angola, the aforementioned mortgages shall be applied, if necessary, to the payment of the depositors of the said Bank of Angola, and that any balance from the proceeds of said mortgages remaining after said depositors have been paid in full shall be returned to the said Pius L. Schwert.

" *It is further agreed* that any amounts collected from the stockholders of the said Bank of Angola as a result of an assessment upon them, shall be applied toward the payment of depositors prior to any payment to depositors from the proceeds of the mortgages above mentioned."

The burden of these quotations is to the effect that security was sought and given for the depositors. Such security, if the bank continued business, was to be used to keep the bank in good financial shape, but after it went out of business it was to be used to protect the depositors so that they would receive the full amount of their deposits, if the use of that fund could produce such a result. If the agreement had not been made, the defendant Schwert would have been liable only for the amount of his assessment, $15,400, and no more. It is only equitable to hold that before the bonds and mortgages are applied, if necessary, to secure the depositors, there should be first impressed on such bonds and mortgages and the value thereof and the fund thereby represented, the amount of the assessment against the defendant Schwert as an offset against such assessment. (*Mosler Safe Co.* v. *Guardian Trust Co.*, 208 N. Y. 524, 531; *Korbly* v. *Springfield Inst. for Savings, supra,* and *Matter of Bank of Spencerport,* July 26, 1932, LOVE, J., not reported.) The plaintiff, therefore, will regard $15,400 of the funds represented by such bonds and mortgages as an offset against the assessment against the defendant Schwert. The plaintiff will then realize on all the assets of the bank, including the amounts realized from assessments, and then, if there is a deficit in moneys owing to the depositors by the bank, the fund represented by the bonds and mortgages, less the $15,400 offset, should be applied to such deficit of moneys owing the depositors, and any surplus is to be returned by the plaintiff herein and by the bank to the defendant Schwert.

A decision and judgment in accordance with the above to be presented to me for signature.