JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Appellant, *v.* LEONARD BEVILACQUA, Respondent.

Fourth Department, May 13, 1936.

*Francis T. Findlay,* for the appellant.

*George A. Orr,* for the respondent.

CROSBY, J.  This is an appeal from a judgment dismissing the complaint upon the merits in an action by the Superintendent of Banks to collect from defendant the sum of $2,125, upon his stock liability as a stockholder in a defunct bank, pursuant to section 80 of the Banking Law of the State of New York.

The facts are all stipulated.  It is needless to recite them, for the whole case comes down to the question whether defendant may have a set-off, against his stock liability, of the amount contributed by defendant to a certain $50,000 fund advanced by defendant and eleven other stockholders and directors, over a year before the bank failed, for the purposes mentioned in the written instrument executed by the contributors on November 21, 1931.

Before considering the terms of that instrument let us review briefly the circumstances leading up to its execution.

The examiners of the Banking Department made an examination of the bank in question and informed its officers that there was an impairment of its capital to the extent of nearly $49,000, and wrote them: " Let us know what you intend to do in the matter." The Superintendent of Banks (plaintiff) did not exercise his power to close the bank (Banking Law, § 57) nor his right to levy an assessment against its stockholders (§§ 56 and 121).  After some negotiations between the Banking Department on the one hand, and the defendant and others interested in the life of the bank on the other hand, it was arranged that the latter should create a $50,000 fund for a purpose satisfactory to the Banking Department so that the bank could be permitted to carry on.  The attorney for the defendant and his cosigners of the instrument of November 21, 1931, sought to forestall the very controversy now before us, by asking the Banking Department to commit itself to the proposition that the amounts contributed by them would be credited upon their several stock liabilities in case the bank should ultimately go into liquidation.  The Banking Department refused to do this, and expressed a doubt that the courts would " sanction any such agreement " if made.  Thereafter defendant and eleven others subscribed varying amounts to the $50,000 fund hereinbefore mentioned.  Defendant's contribution was $3,333.33, an amount considerably in excess of his stock liability, even assuming he were called upon for a full 100 per cent contribution.

Now we come to the terms of the subscription.  In its preamble it reads: " Whereas it is desired that additional security be given to the depositors," etc.  Then it recites a consideration and acknowledges its receipt.  At this point it should be said that defendant does not dispute the consideration, and does not claim the right

to receive back the $3,333.33 or any part of it, even the surplus over and above the amount necessary to satisfy his stock liability. His only claim is that, since his $3,333.33 was actually all used to help pay depositors he is entitled to a set off against his stock liability.

The instrument further provides that the $50,000 contributed by defendant and others should be held by the bank itself " for the better security of the depositors."

Then follows this paragraph: " It is further agreed that this agreement shall continue in force and effect until the securities of the East Side Bank have appreciated sufficiently in the opinion of the New York State Banking Department to protect said depositors, * * * at which time the subscribers hereto shall be released from the terms of this agreement and said securities restored to their respective owners," etc.

Then follows a provision that " the owners of said bonds so deposited reserve the right of using the coupons on the deposited bonds and the owners of the deposited stocks to have the right of receiving the dividends on the deposited stocks," etc.

Finally we have this provision: " It is understood that in case of a possible liquidation of said East Side Bank these securities or cash deposited hereunder shall be applied, if necessary, to the payment of the depositors," etc., with a provision, further, that any surplus, after depositors were paid in full, was to be returned to the subscribers.

It is the claim of the plaintiff that defendant's contribution of $3,333.33, made in the manner mentioned, and for the purpose outlined in the instrument of November 21, 1931, does not relieve defendant from his stock liability, while defendant contends that he is entitled to set off his contribution against his stock liability.

The Special Term decision is in favor of defendant, and plaintiff is appealing. All of the Special Term decisions in the State of New York to which our attention has been called, are favorable to defendant's contention. Some of them, however, though not all, relate to cases where contributions were made under an express agreement with the Banking Department that they be set off against stock liability. The case of *Broderick* v. *Britting* (147 Misc. 363) is much like the instant case and the Special Term there decided our question favorably to defendant.

In cases where, at the time the contribution was made, the bank was already in liquidation, it has been generally held that the contribution can be set off against stock liability. Such a case is *Korbly* v. *Springfield Institution for Savings* (245 U. S. 330).

On the other hand, it is quite generally held that one may not set off against a stock liability a claim against the bank for services (*Van Tuyl* v. *Schwab*, 165 App. Div. 412), or a depositor's credit (*Banking Commission* v. *Bitker*, 216 Wis. 497; 257 N. W. 616.)

What seems to us a very reasonable and just rule governing set off against stock liability appeared in the Yale Law Journal in 1932 (Vol. 41, p. 589):

" The test of a stockholder's right to set off the payment of a prior assessment on his stock seems to depend upon the purpose and use of such a payment, that is, whether it be for the operation of the bank or for the benefit of creditors in liquidation proceedings."

The note further goes on to say, in substance, that the right of set-off does not arise where the contribution is made to the bank itself in order to strengthen its financial condition, but does arise when the contribution is made essentially for the greater security of depositors in case of liquidation, citing, among other cases, *Mosler Safe Co.* v. *Guardian Trust Co.* (208 N. Y. 524).

Though this note speaks of the set-off privilege given to " assessments," the same principle would seem to apply to voluntary contributions. A voluntary contribution ought to be even more amenable to the wish of the parties than a compulsory assessment.

Now what was the intention of the parties? In the instrument under consideration they speak of the purpose of the fund being to give " additional security," and " better security " to the depositors. This does not necessarily mean " additional " to the full stock liability provided by statute. It is " additional " in the sense that, in defendant's case, it is fifty per cent larger than all that could be collected from him pursuant to statute; and it is " better " in that it is cash put beyond the control of the contributors and that does not have to be collected at the end of a law suit.

Furthermore the fund never went into the bank's assets; it never appeared on the bank's books. All through the instrument the contributors are spoken of as the " owners " of the fund, and they have the coupons on the bonds, as they come due, and the dividends on the stocks, and it is only " in case of a possible liquidation " of the bank that the fund can be used at all. Until then the fund served only as a " security to depositors." It benefited the bank, as such, only indirectly, in securing from the Banking Department consent to run along on impaired capital. And lastly the instrument recites that " any balance remaining, after said depositors have been paid in full, shall be returned to the parties hereto *pro rata*," etc.

These conditions, that the fund can only be used after the bank has gone into liquidation, and for the sole purpose of enabling

depositors to get their money, bring this case, for all practical purposes, within the principle of the case of *Korbly* v. *Springfield Institution for Savings* (*supra*). There the contribution was made after the bank was in liquidation and the stock liability had already accrued, and, for that reason, the right to set off the contribution against stock liability was recognized.

The judgment should be affirmed, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment affirmed, with costs.