BANKING COMMISSION, Respondent, vs. PRUDENTIAL INVESTMENT COMPANY, Appellant.

*October 14, 1938—January 10, 1939.*

630

For the appellant there were briefs by *Fish, Marshutz & Hoffman* and *Bender, Trump & McIntyre,* all of Milwaukee, and oral argument by *Irving A. Fish* and *Walter H. Bender.*

For the respondent there were briefs by *Dougherty, Arnold & Kivett* and *Affeldt & Lichtsinn,* attorneys, and *Suel O. Arnold, George A. Affeldt,* and *Rud. W. Talsky* of counsel, all of Milwaukee, and oral argument by *Mr. Arnold* and *Mr. Talsky.*

The following opinion was filed November 9, 1938:

FAIRCHILD, J. If the effect of the resolution adopted by the stockholders and directors as set out in the statement of facts was to levy a voluntary assessment under sec. 220.07, Stats. 1931, the money paid by the stockholders thereunder became part of the capital of the bank as ruled by the circuit court, and this is true regardless of any understanding which the stockholders may have had at the time that they paid the assessment. *In re Plain State Bank* (1935), 217 Wis. 257, 258 N. W. 783; *In re Security Savings Bank* (1935), 217 Wis. 507, 259 N. W. 426.

In *Delano v. Butler* (1886), 118 U. S. 634, 654, 7 Sup. Ct. 39, 30 L. Ed. 260, a voluntary assessment was levied by the directors of a national bank, and a stockholder who had

paid this assessment claimed an offset against his statutory liability. The court said:

"The assessment was not paid by the stockholders for the purpose of effecting a liquidation of the affairs of the bank, but was understood to be the price paid for the privilege of continuing its business, in the hope of saving their investment. If it was paid under a mistaken supposition that, in the event of future failure, nothing more could be required of them, there is nothing to show that the shareholders were led into the mistake by any misrepresentations either of fact or of law on the part of the creditors for whose benefit the receiver is now acting. The mistake, if any, is one for which each shareholder is alone responsible."

Circumstances existed which would embarrass the bank unless something was done to strengthen it. Had there been no effort to meet the exigency, in all probability the bank would have closed, and the one hundred per cent statutory assessment would have followed immediately. It is evident that the stockholders and directors were apprehensive of a failure, and that they wished to keep the bank open with the hope of salvaging their investment. They attempted to devise a plan by which they could secure the benefits of a voluntary assessment without incurring the risk of having to pay again in case the bank failed. A voluntary assessment was levied, but with an agreement that the avails would be applied against the statutory liability if the bank should fail, and in this way the bank kept open for a period during which other deposits were secured. But the plan of voluntary assessment set forth in sec. 220.07, Stats. 1931, cannot be privately amended or modified. Since the assessment was for the purpose of keeping the bank open, the avails necessarily went into the capital of the bank as the statute provided.

The appellant has cited cases in which a setoff was allowed, but in most of them there are distinguishing elements.

In several cases in which a credit was allowed for voluntary contributions, those contributions were made without reference to any statute authorizing voluntary assessment. *Broderick v. Britting* (1933), 147 Misc. 363, 264 N. Y. Supp. 8; *Broderick v. Bevilacqua* (1936), 247 App. Div. 599, 288 N. Y. Supp. 208; *Anderson v. Love* (1934), 169 Miss. 219, 151 So. 366, 153 So. 369; *Austin v. Hough* (Mo. App., 1928), 10 S. W. (2d) 655.

The case of *Mosler Safe Co. v. Guardian Trust Co.* (1913) 208 N. Y. 524, 101 N. E. 786, decided by the New York court of appeals, is like the present case in some respects. A notice of assessment was sent to stockholders, some of whom paid as demanded. But this assessment was made after the superintendent of banks had taken possession, and at his direction, and the only purpose for which the superintendent had power to direct such an assessment was to enable the bank to resume business. In fact business was never resumed, and the fund was used in liquidation, together with the avails of the one hundred per cent statutory assessment which the superintendent later levied. Thus the effect was the same as if the superintendent of banks had levied an assessment of one hundred fifty-six per cent. It was held that the stockholders could set off the amounts they had paid upon the first assessment, but the case is clearly distinguishable from the present, in which the first assessment was made while the bank was still open, and not for the purpose of liquidation, but to forestall a threatened failure.

We are of the opinion that the trial court was right in rejecting the claim that liability under sec. 221.42, Stats., accrued when the banking department approved the stabilization on July 20, 1932. Sec. 221.42, Stats. 1931, provided that the double liability imposed by that section should accrue when the commissioner of banking took possession.

Ch. 17, Laws of 1933, which created sub. (20) of sec. 220.07 and provided that liability should accrue when a stabilization agreement was entered into, did not become effective until February 28, 1933, and was therefore not in effect in time to fix the liability as of the date of stabilization. Thus the double liability accrued on May 25, 1933, when the commissioner took possession.

The appellant relies upon ch. 6, Laws of 1933, which validates stabilization agreements and all acts done under any such agreement with the approval of the banking department, and argues that this act validated the so-called trust agreement entered into in the present case. The validating act is section 5 of chapter 6. Section 4 of that chapter created sec. 220.07 (16) (b), Stats., providing that the banking review board may under certain circumstances order the segregation of new deposits when an emergency exists in the affairs of a bank and prior to the going into effect of a stabilization agreement. Section 4 also created sec. 220.07 (18), providing for the segregation of new deposits after stabilization. Prior to the enactment of chapter 6, which became effective on February 11, 1933, there was no express statutory authorization for the segregation of new deposits, but there was such authorization for stabilization agreements, and in connection with the stabilization of certain banks the banking authorities had approved the segregation of new deposits. We agree with the trial court that the purpose of the validating act was to remove any doubt as to the validity of these arrangements, and that the act did not validate any attempt to modify the plan of voluntary assessment contained in sec. 220.07, Stats. 1931.

The resolutions of December 30, 1932, and January 3, 1933, resulted in a voluntary assessment to which the usual consequences attached. We conclude that no trust resulted

and that no trust fund exists. We do not feel warranted in expressing any further opinion until concrete questions are presented.

*By the Court.*—Judgment affirmed.

FRITZ and NELSON, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on January 10, 1939.